for oral argument this morning and so we won't be taking a break and let's go ahead and get started. First case is 18-9537 Energy West versus Lyle. You may proceed. May it please the court I'm William Mattingly here for Energy West. I'm going to endeavor to save three minutes for rebuttal but I understand my time's my own problem. Let me talk about the Lucia remand issue first. Hopefully I can condense this into a really quick portion of my argument. To understand why I don't think that my client has waived the opportunity to raise the issue now let me tell you what the timeline was. The Administrative Law Judge hearing happened in May of 2016. This court issued Bandemir in December of 2016 which was the first court to say there may be a problem with the way ALJs are appointed pursuant to the appointments clause. The ALJ issued his decision March of 2017. Secretary Acosta, the Secretary of Labor, acknowledged there was appointment problem and appointed the ALJs in letters in December of 2017. The board's decision was issued in April of 2018. Lucia was decided the same day I was in this case in June of 2018. Clearly this court has ruled in Turner Brothers if you don't raise it for the agency you've waived the issue. I didn't raise it for the agency. Why am I standing here arguing? Two reasons. First, as the director has cited, the Benefits Review Board was sending some cases back but they weren't doing what Lucia required. Lucia requires a new ALJ and a new hearing. Well, Mr. Bandemir presented it to the Benefits Review Board. No, it was not. What the board was doing was only sending cases back to the same ALJ to reevaluate. I misspoke. That would sound like my question. Mr. Bandemir raised the freight tag issue in the agency. That's what Judge Matheson said in footnote one. Right. That's why in Bandemir the panel said that the court had jurisdiction. That he had raised it prior, certainly prior to Lucia and frankly prior to the Bandemir decision. So why couldn't you have raised this to the Benefits Review Board comparable to the way that the petitioner did in Bandemir? I could have but it would have done no good to raise it for the agency. The way that the challenge would have been made was as a facial challenge to the Constitution that the ALJ was not appointed in accordance with the Appointments Clause. The Benefits Review Board is not an Article 3 court, does not have the power. Well, certainly doesn't have the, there's no question that the Benefits Review Board could have remanded and said the ALJ's decision here was constitutionally insufficient under either Bandemir or Lucia and so it is a nullity and so it is going to be remanded for adjudication before a new ALJ who has been appointed in compliance with the Constitution with Article 2. Just like you're asking us to do. That is correct but the board was not remanding for a new ALJ. So what? The board was just sending it back to the same ALJ. So what? So I may have raised the issue and I understand that. Okay. But that's, the crux of the argument is the agency couldn't do anything and that's what the Sixth Circuit suggested. I think that's what Judge Bachrach is asking you. Yes, they could have done something. They could have said, all right, we'll void it, we'll send it back. They don't have to appoint the new ALJ. They couldn't, they didn't have the power. They could have taken the action that you needed them to take to get you there. Let me move on to the crux of the argument then. Then there's two problems. So there's a legal issue. The ALJ didn't apply the criteria correctly. And then a factual issue. The ALJ hasn't explained his findings to allow this court or any reader to understand why he did what he did. So this is a case that involves a 15-year presumption. Judge Bachrach, I was in front of a case with you several months ago. You understand this presumption. It's a published decision. You wrote in the decision. It's a very powerful presumption when a minor has 15 years of coal mine employment and can establish total disability. However, total disability is established by the minor. They carry the burden of proof to establish that. And the regulation in question is 718.204B2. And the problem that has occurred in this case is that the ALJ, and now the Agency on Appeal, has read out the first part of that about medical criteria and has the phrase, in the absence of contrary probative evidence, certain medical criteria can establish disability. That part of the regulation was read out by the ALJ. You're talking about the ABG studies? Yes, I'm talking about the blood gas studies. Because it was without question that the two blood gas studies administered with the independent medical examinations met the Department of Labor criteria. They suggested pulmonary disability. When you read the Federal Register that put that part of the regulation into law, the agency explained altitude affects blood gases, age affects blood gases. In 1980, it was too complicated to come up with any other than a simple table to use. Today, we could use an app and calculate it precisely for altitude and age. That hasn't been done yet. Well, let me ask you this about Dr. Forney. So Dr. Forney says that he was relying on Dr. Crapo and, I don't know how to pronounce it, Crapo and Morris. And so let's say hypothetically that Dr. Crapo and Morris are two internists that work in affiliation with Dr. Forney, and they tell him, look, by the way, I know you do a studies in Table C. They're all a bunch of malarkey. This is really the appropriate test. And so Dr. Forney goes forward and says, well, I'm not abiding by Table C, or Appendix C rather. I'm going by what this other doctor said. And now, would that be probative contrary medical evidence? In your Well, that's not what happened here. Well, tell me what happened then. Where in the record? I know he says he relied on Dr. Crapo and Morris, and I know you said in your reply brief, I think, that he was relying on a printout that is in the record, but I didn't see a site for that. And I scoured the record to find anything from Dr. Crapo and Dr. Morris, and I didn't find anything. So where in the record can I find what Dr. Crapo and Morris did that Dr. Forney allegedly relied on? So it's on page 37 of the Joint Appendix. That gives you the printout from LDS Hospital with the predicted normal range. And right above where it says arterial blood gas data on that page, in small print, it has a PF reference in sites to NHANES 3 slash Crapo slash SU. And that's the medical reference it's given. And do they, in page 37 then, if I go look at that, is it going to have any reason for Dr. Crapo and Morris's arrival at a contrary table? Are they going to have explained it? It's not explained, Judge, except that, as in scientific data, it gives you the range of normal and abnormal. And when you look at the blood gas study for the PO2, the upper limit of normal is 83. The lower limit of normal is 61. And this result was 64. So it falls within that range as defined by the formula that's referenced on that page. And that's not the only thing here, though. The other thing is the Department of Labor's examiner, Dr. Gagin, offered the same conclusion. In his deposition? When I deposed him. And it's, the administrative law judge made a big deal out of the written decision being different than the deposition. That's wrong. Look back at Dr. Gagin's written report. All he said was there was mild slash moderate impairment. He could walk less than half a mile and abnormal blood gases. So in the deposition, I simply, I handed him the slip and said, the printout here from Castleview Hospital in Price has a reference range. This falls within that normal range. He agreed. So his opinion really wasn't all that different, except I got him to use the magic words in the deposition, there was no impairment. His assessment for the Department of Labor was mild slash moderate impairment. And it makes no- Well, I thought you just said, the first time you quoted that, you said abnormal blood gas values. He didn't. Well, that's a biggie. Well- I mean, that's what Table C talks about. It is. And here is the problem with the agency's decision. It's an interplay between doctors and lawyers, and how lawyers are supposed to use the medical criteria when it reaches certain numbers, and then how doctors are supposed to view that same information. So in the absence of contrary probative evidence, if we didn't have Dr. Farney's testimony, if we didn't have Dr. Gagin's testimony, this would establish disability, because it meets the table values. But as the Federal Register explained, age and altitude can affect these, but we're not going to worry about that. We're going to make the table as easy as possible and give it the benefit of the doubt to the minor. Well, that establishes a prima facie case that, okay, it meets the quality standards, it meets the criteria we think it suggests disability, unless there's contrary probative evidence. And here you have the only two doctors who did examinations and offered opinions both say, when I look at the reference values, it falls within that. Therefore, it's a normal blood gas study for this gentleman's age and altitude where it was sampled. Therefore, there is not total pulmonary disability. And by the way, that's consistent with the ventilatory studies and the diffusion capacity studies, which were also normal in this case. So all that leads me to the medical conclusion. There is not a totally disabling pulmonary disease. Where the ALJ went wrong in this case is he said, blood gas values qualify. If a doctor says anything else about that blood gas, I'm throwing his opinion out because it's not credible. That's not what the agency criteria says. And the You have to look at all the evidence, and you have to go through each category of the medical evidence, and then the administrative law judge consider all that evidence and reach a conclusion. That's what the agency's expertise is supposed to allow the ALJ to do. That didn't happen in this case. And for the ALJ to say, I think the written report was more credible and persuasive, makes no sense because the finding of a mild-slash-moderate impairment based on is not an opinion of total disability. How do you distinguish Rockwood? How do I distinguish Rockwood? On this point. Rockwood, the ALJ considered all the relevant evidence. It's in the discussion there that all the relevant evidence was considered by the ALJ. He considered the doctor's opinions. Rockwood had a different finding on blood gases also because there, Dr. Gagan had blood gases with exercise that decreased. And the administrative law judge found that to be very probative in weighing all of the relevant evidence. So that's how I did it. It's a different factual pattern. Here you don't have those gases. I'd like to save the rest of the time. You wanted your rebuttal? Yes. Thank you. Let's hear from Mr. Waldman. And you're going to split your time with Ms. Herman? Yes, Your Honor. I'd like to hopefully split my time approximately in half with Ms. Herman today. I was here primarily to address the appointments clause forfeiture issue. Could you introduce yourself? Pardon me? Could you introduce yourself? Oh, yeah. I'm Ed Waldman for the Director Office of Workers' Compensation Programs, United States Department of Labor. I would like to split my time today with the client's counsel, Ms. Herman, roughly equally. And I was here primarily to address the appointments clause forfeiture issue today. And my friend, Mr. Mattingly, very candidly went through the chronology, which I think fairly obviously syncs his argument. And the court seemed to understand the weaknesses with regard to his argument there. Unless the court has any specific questions for me about that, I'll turn to the blood gas study issue, which the court appeared to be more interested in. Has there been a remand under the appointments clause and directed that a different appointed ALJ hear any of these cases in the hundreds of other cases that are pending? Has there been a remand by the Benefits Review Board? Yeah. There have been quite a few, yes. To a properly appointed? Pardon me? To a properly appointed ALJ? Yes. Yes, Your Honor. The first of those cases was issued in October of 2018, a few months after Lucia was issued. The Benefits Review Board remanded for the Lucia remedy and has done so consistently since then. With regard to the blood gas studies, we have here a 331-page joint appendix and a record that's even larger than that. And my friend, Mr. Mattingly, points to page 37. In mine, it's on page 38. And he points to that very small print reference. It says PF reference NHANES3 slash CRAPO or CRAPO slash SU. And that's the basis of Mr. Mattingly's argument that they have that energy west here engaged in the scientific controversy. But they didn't actually put that study into the record. And so we don't know the basis for the doctors concluding that the qualifying values for blood gas studies should be any different than they appear to be in appendix C of the notice and comment regulations that the Department of Labor promulgated. And we don't know why, what the reasoning is. It's as if, and when Dr. Farney and Dr. Gagone testified and wrote their reports about this, they didn't give explanations. They simply asserted that these were normal blood gas studies with respect to the altitude and age and barometric pressure. Those are just bare assertions. There's no reasoning given. There's no documentation given. And so it was completely... What more needs to be said? Pardon? What more needs to be said? Well, I think Mr. Mattingly is criticizing the ALJ for not having engaged in this or resolved the scientific controversy as to what the proper values should be for qualifying blood gas studies. But the problem is that Energy West didn't put in that evidence. The Department of Labor has its notice and comment rulemaking and its promulgated regulation, but Energy West didn't put in any evidence on that other than a couple of doctors conclusively asserting that, oh, well, this guy had normal blood gas studies based on the altitude. And in fact, that was based on the fact that these blood gas studies were taken at the higher end of that range of 3,000 to 5,000 to 6,000 feet. So they're essentially arguing that there's a linear relationship between the increase in the altitude and what value should be The preamble that the Department of Labor published when it promulgated these rules in 1980 specifically said that they could not establish a linear relationship between the increase in altitude and what the qualifying value should be. And that's why they chose to go in a different direction than that. And they chose to go with these three different ranges. Now, it may be true, as Mr. Mattingly says, that we're 30, almost 40 years down the road now, and maybe the science has advanced. If that's the case, there's a couple of things that Energy West could have done. They could have put in that scientific evidence so that the ALJ would have had it before him and been able to have made an informed decision. But all they put in was a this guy had normal blood gas studies based on the altitude, period. That's all they wrote. Can I just ask, for clarification, when you say it wasn't put in the record, what about the page that Mr. Mattingly is talking about, that you're referencing, page 38? Yeah, page 38. That was in the record, right? Well, the citation is in the record, but the actual medical research By Dr. Crapo and Morris? Correct. It's not in the record. And maybe Mr. Mattingly is more adept on the Internet than I, but I wasn't able to actually find that study on the Internet. I want to point out one more thing, too, about that study as my time begins to run down here, point out that that says PF reference. That's pulmonary function. And that's in regards to the pulmonary function studies. Beneath that is the arterial blood gas data. So that study itself, at least on the face of it, relates only to the pulmonary function criteria, not to the blood gas study criteria. So even this reference seems to be on its face irrelevant because it's not addressing blood gas studies. It's addressing pulmonary function studies. At this point, unless the Court has any further questions, I'd like to reserve the rest of the time for Ms. Herman to address the merits of entitlement. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Victoria Herman. I'm here today on behalf of the respondent, Mrs. Lyle, to ask this Court to affirm the decision to award benefits. So an employer has brought up several different arguments in this case, and I think probably the one that is of primary concern is regarding the blood gas testing. Employers' argument basically is that the ALJ's decision with regard to the blood gas studies was improper, but this is simply not the case. At the end of the day, the majority of the ABG testing did qualify under the regulations. The employer may not like the regulations, which is basically what this comes down to, is a request for this Court to create new subsets within the sets created in the appendix, the appendix to 20 CFR 718.204. Congress has already set out delineations and has considered the altitude and age, which seems to be the primary issue that employer is raising. Employer also noted that the ALJ should have considered contrary evidence. Realistically, there was none in this case. Employer has pointed to the reference that Mr. Walden spoke to you previously about, but without the information that comes with that reference, there was nothing else for the ALJ to consider. Is it a postdoc rationale? In other words, Mr. Mattingly is saying, well, the ALJ may not have liked that evidence. He may have thought it was conclusory, but he disregarded it. In other words, the table, the appendix, specifically gives the qualification for contrary medical evidence. Dr. Farney specifically testified that he was relying on a study by Dr. Crapo and Morris. Now, maybe that study was not in the agency record, but certainly Dr. Farney's deposition testimony was in the record, and Dr. Farney testified that it was medical evidence. So why isn't the ALJ's failure to even acknowledge the Crapo and Morris possibility that that might furnish contrary medical evidence, why isn't that itself a legal error? Your Honor, I think at the end of the day, I don't think it would have been a legal error. I think the ALJ did spend a tremendous amount of time reviewing Dr. Farney's medical report and his deposition testimony. If there had been something for him to consider, I think certainly he did that. But at the end of the day, aside from putting two names on a piece of paper, Dr. Farney never particularly explained what that evidence would have been, what it would have said, other than as the altitude rises, that number should be adjusted. But the appendix has already taken care of that for us. And as this Court noted in several previous cases, the department is bound by its own regulations. So the testing qualified. Employer also noted that there was also an ABG test in the file that was not considered, that was not qualifying. I think the more important part of that is that one test of all of the testing was the only one that did not qualify. In addition, it was excluded as evidence by the ALJ. There was no assertion on any of the appeals that it should have been admitted. Employer never attempted to admit it as evidence of its own that there was no qualification. And employer also failed to note that there was additional testing in the treatment records, which is where that non-qualifying test came from, that there was additional testing immediately after that blood test that did qualify. I think the bigger concern, as well as Dr. Farney's medical opinion, had several other major flaws in it that the ALJ certainly went to great lengths to explain. Dr. Farney failed to consider Mr. Lowell's correct coal dust exposure. He based his opinion on the idea that all of Mr. Lowell's coal dust exposure was minimal because he worked in a non-production shift, which was not the case. He also relied very heavily on statistical information, which this Court and several others have also noted is not proper, what this Court, I believe, called a lack of individualized application. Dr. Farney basically said minors who work in Western states do not develop black lung at a rate similar to minors who work in the Eastern states, and therefore it's unlikely that he had black lung. But there's no information as to why Mr. Lowell could not have been one of the few that did develop black lung in a Western state or where that information came from at all. There doesn't appear to be any information that would corroborate Dr. Farney's statements with that regard. He also failed to take into account the claim it's oxygen consumption, saying that he was only on oxygen at night, which was not the case. He was on oxygen for somewhere upwards of 14 hours a day. And he also failed to discuss in his own testing that as the walking test continued, as he was doing his ABG testing, that the numbers that he got in his testing continued to drop off and showed severe abnormality. So I think when you look at the totality of Dr. Farney's medical opinion, there were several major flaws that Judge Romero noted that were very important in addition to the fact that Dr. Farney simply wanted the judge to create a whole new section of values to determine whether the testing would qualify. And I think pretty blatantly, certainly the testing did. Could you restate for me as succinctly as you can, other than the two gas studies, what other evidence supports Judge Romero's finding of black lung disease? The finding that Mr. Lyle suffered from black lung? I think Judge Romero did an excellent job. He spoke certainly at length about Mr. Lyle's coal dust exposure, the history of his mining employment, spoke about his symptoms, symptoms that Dr. Farney, excuse me, Dr. Gagin and Dr. Tomaszewski all had referenced. I think everybody acknowledged that there was definitely impairment. The question certainly was just where did that impairment come from? I think certainly Dr. Gagin acknowledged that the testing qualified and certainly could have come as a result of his time in the mines. I think Judge Romero did an excellent job of kind of wading through all of those factors, his employment history, his medical history, and I see my time is up. If I may briefly conclude, Your Honor. In conclusion, because the employer failed to provide any credible argument for why Judge Romero's findings regarding the ABGs were improper, because the employer waived its argument under the Appointments Clause, and because Judge Romero's opinion was based on substantial evidence, we would ask this Court to affirm Judge Romero's opinion. Thank you, Counsel. Thank you. We understand your argument. If I had a chance to fix the record, I'd have Dr. Farney attach that study and or a proper citation. I didn't. But remember what I had done before that. I'd taken the deposition of the Department of Labor's doctor, and on page 16 of the joint appendix, he simply looked at the form he provided to the Department of Labor. And when I asked, was that blood gas study within the normal range, he said, yes, it was. So he corrected what he had said in the written report. It was no longer an abnormal blood gas study. It was a normal blood gas study. I'm not asking for new tables. I'm not asking for new criteria. I'm asking for the current criteria to be applied by an administrative law judge. And to have that contrary evidence weighed. There is no physician opinion evidence in this case that supports a finding of total disability. The ALJs claim that Dr. Tomaszewski's first report, he didn't have all the clinical information, somehow counteracts his second report when you consider all the clinical information just doesn't make sense. Dr. Tomaszewski looked at the slides, said the biopsy didn't show black lung, showed another condition. He assumed it was disabling. When he looked at the clinical information, he said, no, I was wrong. It's not disabling. There's pathology there. There's disease there. There's not black lung. But there's not a disabling impairment. The administrative law judge got Dr. Farney's opinion correct because on page 280 of the joint appendix, he states that Dr. Farney testified there was no pulmonary impairment. The director claims that I didn't raise that issue to the board. I did in the board brief at page 29 and 30. And quite clearly, Dr. Farney testified there was no functional impairment in his deposition, page 198 and 199. There is no examining physician's opinion in this case because we only have two, Dr. Gagan and Dr. Farney, who address impairment that say there's no impairment. So here we have a black lung case where the X-rays don't show pneumoconiosis, where the CT scans don't show pneumoconiosis, where a biopsy doesn't show pneumoconiosis, where the two examining physicians say there's no impairment and there's qualifying blood gas tables that suggest there is impairment. That was the case we presented to the ALJ. This decision doesn't resolve those factors adequately. So I think the case has to be remanded. Thank you for your time. Thank you, counsel. We appreciate your arguments. The case shall be submitted. Counselors, excused.